## (February 18, 1969)

■ GWENDELIN SCOTT, Appellant, v. LINCOLN CENTER FOR THE PERFORMING ARTS, INC., Respondent.— Judgment entered April 16, 1968 dismissing the complaint is affirmed with $50 costs and disbursements to the respondent. Plaintiff testified that while at the New York State Theatre, at Lincoln Center, she fell down two steps. Her testimony as to the manner in which the accident happened is as follows: "Well, I was in the midst of everybody else, and I walked with the crowd, and as I said, the area was dim. * * * Suddenly I fell. There was nothing. I fell into emptiness. I mean, it happened in a split second. There I was." It also appears from her testimony that there was a large crowd and the plaintiff walked along at the pace of the crowd. She stated "If they walked a little rapidly I followed through, but I was right behind a mass of people." While there was a large crowd, the plaintiff acknowledged that it was an orderly one. The plaintiff asserted that the lighting was dim and there was also testimony that the entire corridor, including the steps, was covered by dark carpeting of uniform color, and without design. The court dismissed at the end of plaintiff's case. It is fundamental that if the plaintiff made out a prima facie case the dismissal would have been improper. It is also fundamental that in order to make out a prima facie case the plaintiff would have to prove not only negligence on the part of the defendant, but that the accident and injuries resulting therefrom were

caused by the negligence of the defendant. Failure to prove that would constitute a failure to make out a prima facie case. It is our belief that the plaintiff failed to show that the negligence of the defendant — if indeed there were any — caused this accident. There are only two possible bases for establishing negligence on the part of the defendant, (1) the dim lighting, and (2) the uniform color of the rug. We note the following testimony of the plaintiff: "I was in a crowd * * * and couldn't see very much except where I was walking. * * * I can only say that I know that I fell downstairs but I can't — I don't know the area. I didn't see the area. I was boxed in. I had no vision other than where I was walking. Just at that spot." The plaintiff might have been boxed in by a crowd, and her vision blocked by the crowd, but in and of itself that does not form any basis for recovery in this case, the evidence being positive that the crowd was not an unruly one, but on the contrary that the crowd was an orderly one. It is quite apparent then, judging from the circumstances in which she found herself, that neither the dim lighting nor the uniform coloring of the rug had anything whatsoever to do with her fall. Consequently, there being no causal relationship between the alleged negligence and the accident, no prima facie case was established. We might add, alternatively, that in the circumstances of this case the plaintiff could be held to be guilty of contributory negligence as a matter of law. The plaintiff did say, as indicated, that she "couldn't see very much except where I was walking." And, also "I had no vision other than where I was walking. Just at that spot." From her testimony that she was walking step by step with the crowd and could see in front of her, it is difficult to imagine that had she been alert and had she looked, that she would not have seen the people in front of her descending the steps. Indeed, she did testify that she saw people descending. Consequently, it could be found that her fall resulted, not from any negligence on the part of the defendant, but rather resulted from her own contributory negligence. In all the circumstances, we believe that the Judge was correct in dismissing the complaint. Concur — Capozzoli, Markewich and Rabin, JJ.; Eager, J. P., and Macken, J., dissent in the following memorandum: Eager, J. P., and Macken, J. (dissenting). While attending a performance of a theatre leased and operated by defendant, plaintiff fell down two steps between levels of a public corridor. She is five feet tall and was walking in a crowd with people ahead and on each side of her when, as she described it, "Suddenly I fell. There was nothing. I fell into emptiness." The corridor and steps were 12½ feet wide, the two treads each 13½ inches wide, and the three risers 4½ inches high, the difference in height between the levels being 13½ inches. As appears from the photographs, the entire corridor, including the steps, was covered by dark carpeting of uniform color and without design. (Compare *Brooks* v. *Bergdorf-Goodman Co.*, 5 A D 2d 162.) Plaintiff testified that the lighting was "dim, you couldn't read under that light". In response to questioning by the court, she testified as follows: "THE COURT: Was it dark? "THE WITNESS: No, it was better than dark. "THE COURT: Better than dark? "THE WITNESS: Yes. It was a little lighter than dark. Let me put it that way. I mean, you didn't walk in total darkness." A witness, while describing the lighting as "artistic", testified that it was dim and such that one could not read. The photographs which, during an exchange over an objection to other photographs offered by defendant, the court said had been received for all purposes, reveal a lighting condition not inconsistent with that described by the testimony and require more than a cursory examination to discern that a short distance beyond the steps where plaintiff fell there is another set of steps leading to a still lower level. The complaint

was dismissed at the end of plaintiff's case. Section C26–280.0 of the Administrative Code of the City of New York provides: "All stairways, fire towers, hallways, passageways and other required means of egress, together with all areas to which the public has access, shall be equipped with adequate, artificial lighting facilities. Such lighting facilities shall be used when adequate natural light is unavailable." In our opinion, an issue of fact was clearly presented as to whether, under the physical conditions existing, the lighting provided met the requirements of the statute or, for that matter, of reasonable care. If found to be inadequate, it was for the jury to say whether, with better lighting, plaintiff might have seen the steps or observed that the people ahead of her were descending a slight 4½ inches each step, and whether this five-foot woman surrounded by presumably taller people was contributorily negligent in failing to detect the presence of the steps. (*Bloch* v. *Shattuck Co.,* 2 A D 2d 20; *Duffy* v. *Owen A. Mandeville, Inc.,* 5 N Y 2d 730; *Schneider* v. *Associated Prudential Theatres,* 302 N. Y. 759; *Stengel* v. *Louis' Cafeteria,* 6 N Y 2d 907.) It should be noted that in *Hodge* v. *Niagara Falls Gazette Pub. Co.* (1 N Y 2d 801); *Union Bank & Trust Co.* v. *Hattie Carnegie, Inc.* (1 A D 2d 199), and *Brooks* v. *Bergdorf-Goodman Co.* (5 A D 2d 162 [*supra*]), cited by respondent, there were no claims of improper lighting. The judgment should be reversed on the law and facts and a new trial granted, with costs and disbursements to appellant to abide the event.