■ JULIE A. JUMP, an Infant, by Her Parent and Natural Guardian, ROBERT G. JUMP, et al., Respondents, v DONNA JUMP, Appellant. JERIE L. JUMP, an Infant, by Her Parent and Natural Guardian, ROBERT G. JUMP, et al., Respondents, v DONNA JUMP, Appellant.—Appeals from orders of the Supreme Court, entered February 6, 1978 in Chemung County, which set aside verdicts in favor of the defendant, rendered at a Trial Term, and granted a new trial. The infant plaintiffs were passengers in a car being operated by their mother, the defendant, on March 15, 1975, when the car first went off the highway on the passenger side in its direction of travel and then went across the highway and into a tree. The only eyewitnesses were the infant plaintiffs and the defendant and damages are sought for the personal injuries of the infants. The defendant testified that she was injured in the accident and cannot remember anything that occurred from the time she went to bed on the evening before the day of the accident until about two weeks later. The infant, Julie, testified that on March 15, 1975 she and her mother and sister were going to a 4-H meeting when the accident happened. The defendant was driving and the road conditions "were slippery, because it had rained and then snowed, and there was snow on it, slushy snow". A small truck approached them from the opposite direction and after it had passed she felt the car jolt and move toward the right (passenger side) and thereafter she has no recollection of the movement of the car. The infant, Jeri, confirmed that at the time of the accident her mother was driving her and her sister to a 4-H meeting. It was cold and

"snowing a little bit, and it was miserable". She recalled the small truck approaching her vehicle from the opposite direction and passing, but she recalls nothing else about the events of the accident. The only other witness to testify in regard to the happening of the accident was a Deputy Sheriff who investigated the scene of the accident. He testified that the roads were difficult as to movement at the time of the accident and there was "a considerable amount of sludge and snow divots in the highway in that particular area." He proceeded to the scene at not over 20 miles per hour. The vehicle had struck the tree and stopped on the east side of the highway and he found tire marks—skids that started about 300 feet northerly at a point about six to eight feet off the traveled portion of the west side of the highway. The highway itself was a standard, 27-foot wide road covered with snow on its edges. He testified that as to the highway shoulder on the west side where the automobile first left the road, it was a "snow embanked shoulder" and there were "numerous" ruts. Upon cross-examination the deputy affirmed that the road surface was covered with snow and that he had not noted on his official accident report form that the vehicle had skidded 300 feet before hitting the tree. Upon the foregoing evidence as to the happening of this accident, the question of negligence was submitted to the jury and it found no cause for action in favor of the defendant. The Trial Judge found that verdict to be against the weight of the evidence and set aside the verdicts, granting a new trial. It is well established that evidence of skidding and leaving the traveled portion of the highway on the driver's own authorized lane of travel is some evidence of negligence and is sufficient to create an issue of fact for the jury to resolve (*Coury v Safe Auto Sales,* 32 NY2d 162). However, when there is some evidence of circumstances beyond the control of a driver, which would account for an accident without any negligence on the part of the driver, leaving the proper lane of travel or skidding is not conclusive evidence of negligence (*Barraco v De Pew,* 33 AD2d 816). There was no basis from the evidence herein which would give the Trial Judge a basis for exercising discretion in the interests of justice. There is nothing to establish that the verdicts were against the weight of the evidence and, accordingly, the verdicts must be reinstated. Orders reversed, on the law, without costs, and the verdicts reinstated. Greenblott, J. P., Kane and Herlihy, JJ., concur.

Main and Mikoll, JJ., dissent and vote to affirm in the following memorandum by Main, J. Main, J. (dissenting). We respectfully dissent. Concededly, these infants plaintiffs, little girls aged 10 and 11, were guilty of no negligence of any kind, and the only issues involved are defendant's negligence and damages. The uncontroverted testimony established that there were areas of snow and slush on the highway and that the vehicle operated by the defendant left the highway on its right-hand side, then returned to the highway and proceeded on until it left the left-hand side of the highway, continuing until it struck a tree with such force as to render the vehicle a total loss. Skid marks from the point where the vehicle first left the highway until it collided with the tree measured some 300 feet. The majority apparently attaches great significance to the fact that one of the infant plaintiffs testified to feeling a jolt soon after the defendant's vehicle passed an unidentified small truck proceeding in the opposite direction. However, both girls testified that the truck was on its side of the highway, and any inference that it contributed to the accident is completely without support in the record. The fact that defendant's vehicle left the highway, traveling some 300 feet on and off the highway, and yet was still moving at such a speed as to cause its demolition when it struck a tree is clear,

convincing and conclusive evidence of speed—speed that was equally conclusive of imprudent operation under the conditions existing, to say the least. The plaintiffs' evidence becomes conclusive when it is not contradicted by direct evidence, nor by any legitimate inferences from the evidence, and it is not opposed to the probabilities, nor in its nature surprising or suspicious *(Hull v Littauer,* 162 NY 569; Richardson, Evidence [9th ed], § 123; see *Foley v Rodenberg,* 34 AD2d 697). In conclusion, it has been long and well established that a motion pursuant to CPLR 4404 (subd [a]) may be granted when it can be fairly seen that the preponderance of the evidence in favor of the plaintiff is so great that the jury could not have reached the conclusion it did upon any fair interpretation of that evidence *(Yacano v De Fayette,* 67 AD2d 1059; *Blakeslee v Lubell,* 66 AD2d 958; *Lincoln v Austic,* 60 AD2d 487, mot for lv to app den 44 NY2d 644; *McDowell v Di Pronio,* 52 AD2d 749; *Solkey v Beyer,* 238 App Div 809). Moreover, when a trial court's determination that a jury verdict is contrary to the evidence is not unreasonable, this court should not intervene to reverse that finding *(Yacano v De Fayette, supra; McDowell v Di Pronio, supra; Terpening Trucking Co. v City of Fulton,* 46 AD2d 992). The duty and the responsibility of the Trial Judge in handling these posttrial motions is well stated in *Mann v Hunt* (283 App Div 140). The Trial Judge here heard and observed the witnesses, properly charged the jury, received the verdicts and heard extensive argument by counsel. He then made an "informed professional judgment" which we should not disturb.